# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RONALD L. HALL, )
)
      Plaintiff, )
)
v. )   Case No. CIV-16-23-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
      Defendant. )

## OPINION AND ORDER

The claimant Ronald L. Hall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 21, 1961, and was fifty-four years old at the time of the administrative hearing (Tr. 40, 141). He has an eleventh grade education, and has worked as a ranch hand, concrete laborer, machine shop production worker, and truck driver (Tr. 38, 46). The claimant alleges that he has been unable to work since June 1, 2013, due to cervical spinal stenosis, and problems with his lower back, right hip, legs, and knees (Tr. 141, 163).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 9, 2013, and for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on April 4, 2014 (Tr. 141-50). The claimant's applications were denied. ALJ James Bentley conducted an administrative hearing, and in a decision dated March 12, 2015, found that the claimant was not disabled prior to January 22, 2015, but became disabled on that date, and continued to be disabled through the date of his decision (Tr. 21-29). On November 17, 2015, the Appeals Council vacated the ALJ's decision, and determined that the claimant was not disabled through March 12, 2015 (Tr. 4-8). The Appeals Council's

decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decisions of the Administrative Law Judge and Appeals Council

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 CFR §§ 404.1567(b), 416.967(b), *i. e.*, he could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit/stand/walk for six hours in an eight-hour workday; could frequently, but not constantly, handle and finger bilaterally; could occasionally balance, stoop, kneel, couch, and crawl; and could never reach overhead, or climb ladders or scaffolding (Tr. 24). Additionally, the ALJ found the claimant required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa without leaving the work station (Tr. 24). The ALJ concluded that the claimant was not disabled before January 22, 2015, because there were jobs in the national economy that he could perform, *i. e.*, small product assembler, electrical accessory assembler, and inspector packager (Tr. 27-28). The ALJ then applied Medical-Vocational ("Grid") Rule 202.02 and found the claimant disabled as of January 22, 2015 (Tr. 28-29).

The Appeals Council found that substantial evidence supported the ALJ's findings with respect to the claimant's impairments and RFC, but that the ALJ made an error of law at step five by applying Grid Rule 202.02 to find the claimant disabled as of January 22, 2015 (Tr. 4-8). The Appeals Council determined that the claimant was fifty-four years old as of January 22, 2015 (the disability onset date), and as a result, was in the

"closely approaching advanced age" category rather than the "advanced age" category the ALJ used (Tr. 5). The Appeals Council also found that a borderline age situation did not exist since the clamant was not within a few days to a few months of reaching the older age category as of the onset date (Tr. 5). Accordingly, the Appeals Council applied Grid Rule 202.11 and concluded that the claimant was not disabled from the alleged onset date of June 1, 2013, through March 12, 2015 (Tr. 6-7).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Richard Helton. The Court agrees, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's degenerative disc disease of the cervical spine, chronic pain, left shoulder pain, and headaches were severe impairments, and that his problem concentrating was non-severe (Tr. 23-24). The record reveals the claimant was largely treated with medication by Dr. Helton from March 19, 2013, through December 19, 2014 (Tr. 246-55, 282-95). Dr. Helton's diagnoses included, *inter alia*, myofasciitis, degenerative disc disease, cervical spine disc protrusions, and chronic pain (Tr. 246-55, 282-95). On physical exam, Dr. Helton regularly indicated a back/musculoskeletal abnormality was present, but did not make any specific findings related to the claimant's back or muscles (Tr. 246-48, 250-52, 282, 284-85, 288-89). On April 17, 2014, Dr. Helton completed a Medical Source Statement ("MSS") wherein he opined that the claimant could frequently lift and/or carry ten pounds, occasionally lift and/or carry twenty pounds, stand and/or walk less than two hours out of an eight-hour workday for

thirty to forty-five minutes continuously, and sit for about six hours out of an eight-hour work day for one hour to one and one-half hours continuously (Tr. 290-91). Additionally, Dr. Helton indicated the claimant needed to lie down during the day to manage pain or other symptoms, and that he was limited in his ability to push and/or pull, but did not specify how long or how frequently the claimant needed to lie down, or what his pushing and/or pulling limitations were (Tr. 291). As to postural limitations, Dr. Helton found the claimant could frequently handle, finger, and feel; occasionally balance, stoop, kneel, crouch, crawl, and reach; but could never climb (Tr. 291).

An MRI of the claimant's cervical spine conducted on June 20, 2013, revealed disc protrusions at C3/4, C4/5, and C5/6 that narrowed the central canal to nine millimeters; disc protrusion and osteophytic spurring at C6/7 that narrowed the central canal to seven millimeters; bilateral neural foraminal narrowing at C5/6, C6/7, and C7/T1, most notably at C6/7, left greater than right; and mild right neural foraminal narrowing at C3/4 (Tr. 240-41).

On December 13, 2013, Dr. Adel Malati performed a consultative physical examination (Tr. 271-78). Dr. Malati noted the claimant walked in and out of the office without an assistive device; had a "nice, normal, steady gait;" and was able to do heel walking and toe walking, sit, stand, and lie down without difficulty (Tr. 274). Physical exam revealed the claimant's neck extension was limited to thirty degrees, and that his cervical spine was tender, but Dr. Malati's exam was otherwise normal with the claimant having full range of motion in his shoulders, back, hips, elbows, wrists, hands, knees, and

ankles (Tr. 274-78). Dr. Malati assessed the claimant with degenerative disc disease of the neck with radiating pain to the left upper extremity (Tr. 274).

A state reviewing physician identified only as "DMB, MD 19" completed a Physical Residual Functional Capacity Assessment on January 6, 2014, and indicated that the claimant could perform the full range of light work, specifically referencing the claimant's June 2013 MRI, as well as Dr. Malati's consultative examination (Tr. 56-58). Dr. Charles Clayton affirmed the physician's opinion on March 24, 2014 (Tr. 67-68).

At the administrative hearing, the claimant testified that he takes hydrocodone and flexeril for "all pain," and that the medications reduce his pain, but do not completely relieve it (Tr. 39). He further testified that his parents pay for his utilities, and that he used to help them with their ranch in exchange, but hasn't done so in three or four years (Tr. 40). The claimant stated that he typically spends his day sitting and watching television, but does walk about fifty yards daily to retrieve his mail (Tr. 41). He further stated that he lies down once a day for an hour to an hour and a half because it "kind of helps with the pain . . . headaches, takes the stress off my head, my neck." (Tr. 41). As to specific limitations, the claimant stated he could sit for an hour, and could walk for less than an hour (Tr. 43-44).

Medical opinions of a treating physician such as Dr. Helton are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions

are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ attributed diminished weight to Dr. Helton's MSS weight because: (i) no physical examinations supported his RFC of less than sedentary, and (ii) his limitations were inconsistent with Dr. Malati's consultative exam (Tr. 26). In support of his conclusions, the ALJ referenced Dr. Helton's February 2014 treatment note as an example of an exam within normal limits, as well as Dr. Helton's December 2014 treatment note wherein the claimant denied back pain or weakness (Tr. 26). Nonetheless, the ALJ adopted some, but not all of the limitations in Dr. Helton's MSS when forming the claimant's RFC. The ALJ erred in his analysis of Dr. Helton's opinion for several

reasons.

First, the ALJ failed to analyze Dr. Helton's opinion in accordance with the *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. Although the ALJ referenced the correct analysis at the beginning of step four, and found that Dr. Helton's opinion was inconsistent with Dr. Malati's report, he did not mention or discuss any of the other factors when analyzing Dr. Helton's opinion. This analysis was particularly important here because Dr. Helton was the only treating physician in the record, and the only medical source who opined as to any specific limitations.

Additionally, the ALJ adopted Dr. Helton's findings as to the claimant's ability to balance, stoop, kneel, crouch, crawl, handle, and feel, but rejected without explanation his limitations regarding the claimant's ability to finger, and stand and/or walk, as well as the claimant's need to lie down during the work day (Tr. 24, 291). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Helton's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Helton's findings persuasive but not

others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 17th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**